WILLIAM S. KELLOGG

*v.*

EDWARD WILSON.

1. ADMINISTRATOR'S SALE—*by delegated authority.* The authority given an administrator to sell lands to pay debts, is a personal trust, which he has no authority to delegate to another. He may employ an auctioneer to make the sale, but he must be present and direct, superintend and control the sale.*

2. SAME—*right to set aside, lost by laches.* If an administrator's sale of land is made by an agent in the absence of the administrator, the sale may be set aside in equity on application within a reasonable time. A delay of fifteen years after the sale is such inexcusable *laches* as will prevent relief in equity.

3. ALLEGATIONS AND PROOFS—*in chancery.* In chancery if a complainant recovers, it must be according to the case and upon the grounds made in his bill. Thus, where an administrator's sale of land is sought to be set aside on the grounds that the sale was made by an agent in the absence of the administrator, and for fraud in preventing competition among bidders at the sale, the sale can not be impeached for want of jurisdiction in the court to order the sale.

4. JUDICIAL SALE—*satisfactory proof required to set aside after considerable delay.* After a delay of eight years, an administrator's sale of real estate will not be set aside by a court of equity on a charge of fraud in the purchaser in procuring persons not to bid against him, unless a clear case is made by satisfactory proof.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

Messrs. STEVENSON & EWING, and Messrs. KELLOGG & ELLIOTT, for the appellant.

Messrs. WILLIAMS, BURR & CAPEN, for the appellee.

Per CURIAM: This was a bill in equity to vacate and set aside a sale of a certain quarter section of land made by the administrator of the estate of Benjamin Kellogg, deceased, on

---

* Generally, where power to make sale is given to an administrator or a trustee, how far he may delegate that authority to another. See *McPherson* v. *Sanborn et al.* 88 Ill. 150, and note.

the 21st day of November, 1861, to pay the indebtedness of the estate. On the first hearing of the cause the court decreed that the sale should be set aside. This decree was reversed on appeal and the cause remanded for another hearing. *Wilson* v. *Kellogg*, 77 Ill. 47. In the original bill it was expressly alleged by the complainant, that the administrator of the estate of Benjamin Kellogg filed a petition to sell the land to pay debts; that a decree was rendered which ordered the premises sold; that pursuant to the decree the administrator made the sale. The only objection urged against the sale, in the original bill, was, that defendant Wilson entered into an unlawful combination with two persons who attended the sale, which prevented competition in bidding; but after the cause had been remanded the bill was amended, and complainant set up, as a further ground of relief, that the sale was made in the absence of the administrator, by an agent.

The law is well settled that the authority given an administrator to make sale of lands to pay debts is a personal trust, which the administrator has no authority to delegate to another; the administrator has the right to employ an auctioneer to make the sale, but it is his duty to be present and direct, superintend and control the sale. *Sebastian* v. *Johnson*, 72 Ill. 282; *Taylor* v. *Hopkins*, 40 Ill. 442. Had the objection now urged been made within a reasonable time, it might have been regarded with more favor, but the sale was reported to the court, approved, and the administrator executed a deed conveying the premises to the purchaser at the sale, no objection having been made by the complainant. The sale was made as early as 1861, but the complainant made no objection to it until 1869, when he filed the original bill, and even then he does not attack the sale for the reason the administrator was not present. No objection of this character is heard of until 1876, when the bill is amended. It is apparent, if the complainant had exercised reasonable diligence in learning the facts of his case, that the new facts might have been discovered years ago and relief sought. No satisfactory

reason has been shown for the delay. The complainant was bound to learn, or use reasonable efforts to discover, the facts upon which he relied, and ask for relief in apt time. A delay of fifteen years after the sale was made and confirmed, before relief is asked of a court of equity, is such inexcusable *laches* as must condemn complainant's claim as stale. *Noyes* v. *True*, 23 Ill. 503.

It is also urged by one of the counsel for complainant, in the argument, that the county court had no jurisdiction to render the decree, on account of irregularities in the proceedings, and for that reason the sale should be set aside. This position is fully met by the fact the bill does not seek to impeach the sale on that ground. The proceedings of the county court are not brought in question by the allegations of the bill. It is a familiar principle that a party must recover, if at all, according to the case made in the bill. We must, therefore, decline to consider the objections urged in the argument against the proceedings in the county court, as they do not arise under the pleadings in the case. When the case was before us at a former term, the decree was reversed on the ground the testimony was not regarded sufficient to impeach the sale. The evidence then in the record, upon the point relied upon, was the testimony of Myers and Kilby, who in substance testified, on the day the land was sold they attended the sale for the purpose of bidding ; that appellee, Wilson, agreed, if they would not bid against him, to give them $50, in the event that he did not have to pay over $6 per acre for the land,—in consequence of which they did not bid at the sale. The contract was denied by Wilson, and he was somewhat corroborated by one Puterbaugh. The only substantial difference in the evidence, as shown by this record and the former one, is this: the complainant introduced one Edwin Kilby, who was not a witness on the former trial, and he testified that he was present and heard the agreement made in regard to the bidding, and gives the same version of the matter as the other two witnesses with whom the alleged agreement was made. There is, however, a serious discrepancy

in the testimony of the three witnesses. When Myers was first sworn, he testified that no person was present when the unlawful bargain was consummated but Wilson, Francis O. Kilby and himself. When Francis O. Kilby was placed upon the stand in the first instance, he, too, swore " Edward Wilson, Myers and myself were all that were present." Now, it is somewhat remarkable that Edwin Kilby should have been present and heard the consummation of the contract, and each and every one of the parties who were engaged in the nego-tiation be able to swear that he was not there. They do not put the matter in a mild form, and say they did not see him or recollect of his being present, but they testify positively that only three persons were present when the arrangement was made. If the united evidence of these two witnesses on the part of complainant be true, then it necessarily follows that Edwin Kilby knows nothing in regard to the transaction. When the case was before us at the former term, it was said, a court of equity will not permit a judicial sale to be set aside without clear and satisfactory proof. This sale was made in 1861. The purchaser was allowed, without objection from complainant, to improve the land, redeem it from tax sales, and hold it for eight years, before the complainant utters a word of complaint or objection. This, clearly, is inexcusable. The complainant ought to be concluded by his *laches*. At all events, where there has been such great delay, a court of equity will not lend its aid to dis-turb a judicial sale, unless complainant makes out a clear case by satisfactory proof. Such, however, is not this case. The evidence is contradictory and unsatisfactory.

The decree dismissing the bill will be affirmed.

*Decree affirmed.*