CATHERINE SIBILIA, APPELLANT, V. PAXTON MEMORIAL
HOSPITAL, APPELLEE.

FILED NOVEMBER 5, 1931. NO. 27917.

*Grenville P. North, James Millett* and *North, Caldwell
& Gillogly,* for appellant.

*Brown, Fitch & West,* contra.

Heard before ROSE, GOOD, DAY and PAINE, JJ., and BEG-
LEY, District Judge.

DAY, J.

This action was brought to recover damages from the
Paxton Memorial Hospital alleged to have been sustained
by reason of a burn caused by the negligent placing of a
hot water bottle on the person of the plaintiff. At the
close of all the testimony, the trial court directed the jury
to return a verdict in favor of the defendant.

It appears from the record that the plaintiff paid the
defendant for the services rendered; that the hospital was
not organized for profit; that no dividends were to be paid
upon the stock; and that no benefits out of the funds were
to accrue on account of membership. The articles of in-
corporation provided that "the only persons who shall re-
ceive any remuneration out of its funds shall be managers,
employees, nurses, superintendents, teachers and those who
actually render full service therefor;" that any surplus ac-
cumulated beyond its needs was to be paid over to other
Nebraska charities.

This case seems to come within the rule announced in
*Duncan v. Nebraska Sanitarium & Benevolent Ass'n,* 92
Neb. 162, which was later discussed in *Marble v. Nicholas*

*Senn Hospital Ass'n*, 102 Neb. 343, and in *Malcolm v. Evangelical Lutheran Hospital Ass'n*, 107 Neb. 101. These later cases did not depart from the rule that "a charitable institution conducting a hospital solely for philanthropic and benevolent purposes is not liable to inmates for the negligence of nurses." *Duncan v. Nebraska Sanitarium & Benevolent Ass'n*, 92 Neb. 162. The overwhelming weight of authority supports this rule of law, although there is great disagreement upon the reason for the rule. It does not seem necessary to again discuss the reason for the rule or the conflicting theories. It has been so exhaustively discussed by courts, text-writers and annotators that we forego the opportunity to enter this inviting field of theoretical discussion. Applying the rule to the case at bar, the trial court did not err in directing a verdict in favor of defendants. Judgment

AFFIRMED.

PAINE, J., concurring.

Innumerable cases from many states support the law as stated in the syllabus of this case. These cases have been founded upon the fact that many communities have in their midst wonderful hospitals, conducted by devout men and women of Protestant and Catholic churches, who unselfishly render charitable aid to any who knock at their doors. Persons accepting charity in such a hospital, or even pay-patients, have not been allowed to recover for negligence of incompetent servants or for lack of careful treatment. Many of these cases are discussed in the long note found in 14 A. L. R. 563.

In the opinion in the case at bar it states that the articles of incorporation provided that its funds could be paid out to its managers, employees, nurses, superintendents and teachers who rendered services, and under such a broad provision it is easy to see that a private hospital might be so organized for the sole purpose of avoiding all liability for injuries to its patients, thereby using such articles of incorporation as a cloak to avoid liability, while its managers might receive princely salaries even though no dividends could be paid. In *Stewart v. California Medical Mis-*

*sionary & Benevolent Ass'n,* 178 Cal. 418, paragraph 2 of the syllabus in 176 P. 46, reads: "Where a hospital charged prices similar to those charged by other hospitals being conducted for profit and had operated for 13 years without receiving any charity patients, it was a hospital being conducted for profit and not a charitable institution, though the corporation had been organized for charitable purpose." *Tribble v. Missionary Sisters of Sacred Heart,* 137 Wash. 326.

In any case it should be open to investigation whether the institution was being conducted ostensibly as a charity institution for the sole purpose of avoiding liability, to better protect those institutions which were *bona fide* in their object and nature and rendering distinct charitable service to the community.